UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:08 CR 520 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |
| RO'CEME JETHROW, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's Motion for Compassionate Release. (ECF # 152). The Court appointed counsel for Mr. Jethrow, and his appointed counsel later filed a Notice of Intent Not to Supplement Mr. Jethrow's motion. (ECF #154, 157). The Government filed a Response in Opposition to the request, and Mr. Jethrow filed a Reply. (ECF #158, 159). This is Mr. Jethrow's second request for compassionate release. (ECF #111). His first request was based primarily on the conditions caused by the COVID pandemic, was denied. (ECF # 119).

A. Exhaustion

Under the terms of the First Step Act, 18 U.S.C. §3582(c)(1)(A), inmates may file a request with the court to modify an imposed term of imprisonment for "extraordinary and compelling reasons." However, prior to taking such action an inmate is required to request that the Director of the Bureau of Prisons ("BOP") file a motion on his behalf, and to "fully exhaust[] all administrative rights to appeal a failure of the BOP to bring a motion." *Id.* Administrative rights are exhausted when the warden refuses to recommend that the BOP file a compassionate release motion with the

court, and the prisoner appeals the denial using the BOP's Administrative Remedy program, or if there has been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Program Statement 1330.18; 28 C.F.R. 542(B), The Sixth Circuit has interpreted this to mean that the exhaustion requirement is satisfied thirty days after a warden receives a request by an inmate, regardless of whether any administrative appeals are available or have been pursued. *See, United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). Mr. Jethrow has provided evidence showing that he has exhausted his administrative remedies, and the government does not dispute that this requirement has been satisfied. (ECF #152-4, PageID1880). Therefore, the Court will consider his motion on the merits.

B. <u>Analysis</u>

In order to justify compassionate release a court, "after considering the factors set forth in 18 U.S.C. §3553(a)," must determine: (1) that extraordinary and compelling reasons warrant a sentence reduction;[1] (2) that the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. §3142(g); and, (3) that the reduction is consistent with the USSG's policy statement in §1B1.13. A "compassionate release decision is discretionary, not mandatory." *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010).

1. <u>Extraordinary and Compelling Reasons/ U.S.S.G. §1B1.13 Policy Statement</u>

Mr. Jethrow claims that extraordinary and compelling reasons for relief exist in his case due to a combination of factors, including: (1) Non-retroactive changes to the stacking provisions of 18 U.S.C. §924(c); (2) prison conditions that were more difficult than anticipated at sentencing due to the COVID epidemic; (3) his young age at the time the crimes were committed; and, (4) his "extraordinary" rehabilitative efforts. He contends that his circumstances are also consistent with

---

[1] Alternatively, courts may consider a reduction if the defendant is at least 70 years old and has served at least 30 years in prison.

the Sentencing Guideline Policy Statement that identifies circumstances that should be considered "extraordinary and compelling" reasons for relief.

### a. Non-retroactive Changes to the Law

Mr. Jethrow was charged with four violations of 18 U.S.C. §924(c). He pled guilty to one count, and the Government dismissed the other three as part of a written plea agreement. At the time he entered into his plea agreement, §924(c) applied significantly enhanced penalties for any second, third, or subsequent violations. These were often referred to as stacking penalties. Courts universally applied these stacking penalties when multiple §924(c) charges were simultaneously charged in the same indictment, or otherwise occurred before the defendant had a final judgment on a first §924(c) offense.

As part of the First Step Act of 2018, Congress made non-retroactive changes to the statute, eliminating the enhanced penalty for repeat violations that occurred before a defendant's first conviction under §924(c) was finalized. Therefore, in cases such as this one, when a defendant, who has not previously been convicted of an offense under §924(c), is charged with multiple violations in the same indictment, the stacking enhancements would no longer apply. United States Sentencing Guideline Policy Statement §1B1.13(b) provides that "extraordinary and compelling reasons" for reducing a term of imprisonment exist when one of six circumstances exist. Mr. Jethrow argues that his circumstances are consistent with the policies set forth in §1B1.13(b)(1)(D), (5), and (6). Section 1B1.13(b)(6) states that:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Before the 2024 amendment to U.S.S.G. §1B1.13, the Sixth Circuit held that a change in the law, whether considered alone or in combination with other factors, could not be considered an "extraordinary and compelling" reason for a sentence reduction. *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022)(*en banc*). In doing so, the Court found that the term "extraordinary and compelling," within 28 U.S.C. §994(t) was unambiguous, and, therefore, not subject to agency interpretation. "[A] precedent holding a statute to be unambiguous forecloses a contrary agency construction." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005); *see also, United States v. Neal*, 516 U.S. 284, 295 (1996). Therefore, based on the *McCall* decision, this Court is currently precluded from considering non-retroactive statutory amendments when determining whether extraordinary and compelling reasons for relief exist, despite the Sentencing Commission's inclusion of §1B1.13(b)(6) in its amended Policy Statement.

Even if the Court was free to apply §1B1.13(b)(6), it would not apply in Mr. Jethrow's case. Mr. Jethrow has served more than ten years of his sentence, and he certainly received a long sentence, although it was not necessarily unusually long for the crimes he committed. There was also a change to 18 U.S.C. §924(c) subsequent to Mr. Jethrow's sentencing. However, this change would not produce "a great disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, after full consideration of the defendant's individualized circumstances." U.S.S.G. §1B1.13(b)(6).

The First Step Act altered the penalties associated with a first conviction under §924(c)(1)(A)(ii) for brandishing a weapon in furtherance of a crime of violence, lowering the mandatory minimum sentence from 10 years to 7 years. Though three years would surely be a substantial amount of time for any individual serving a sentence of imprisonment, a three year difference does not create a "gross disparity" in sentence between offenders sentenced now and offenders sentenced under the old statute.

The First Step Act also eliminated stacking provisions that were imposed when a defendant was simultaneously convicted of multiple counts under §924(c). Because Mr. Jethrow was convicted and sentenced on only one count of violating 18 U.S.C. §924(c), the stacking provisions did not apply to him and the First Step Act changes would have had no direct impact on his sentence. Mr. Jethrow concedes that he was only sentenced on one count under 18 U.S.C. §924(c), but argues that his agreement to plead guilty was strongly influenced by the Government's dismissal of the additional §924(c) counts in the indictment. He speculates that the agreed sentence contained in his plea agreement, and adopted by the Court, would have been lower if the risk of stacking penalties had not existed at the time the plea was negotiated.

At the time he entered into his plea agreement, those dismissed §924(c) counts would have come with stacking penalties amounting to a mandatory minimum of 75 years of consecutive imprisonment. Under the current version of §924(c)(1)(A)(i), each additional charge in Mr. Jethrow's indictment would have carried a mandatory minimum of only 5 consecutive years of imprisonment.

The Government cites *United States v. Hairston*, 2024 U.S. App. LEXIS 7865 (6th Cir. 2024), as establishing that, within the Sixth Circuit, "a plea agreement made in part to avoid the mandatory minimum punishment prescribed by stacked 924(c) charges cannot be the target of a successful compassionate release motion." (ECF #158, PageID 1655). This is an overstatement of the holding in *Hairston*. In *Hairston*, the Sixth Circuit was reviewing a district court decision made final before prior to the adoption of §1B1.13(b)(6). It found, simply that the district court did not abuse its discretion "by rejecting Hairston's second ground for relief based on the law then existing." *Hairston*, at *5-6. At the time of the decision, *McCall* was the most recent directive on this issue. *Hairston* offered no opinion on whether non-retroactive changes could be considered when looking at motions brought after §1B1.13(b)(6) was added to the Sentencing Guidelines.

If Mr. Jethrow had been charged today with the same offenses he faced at the time of his plea agreement, the benefit he received from pleading guilty would have been significantly reduced. At the time of his plea, dismissing Counts 6-8 avoided a possible extra 75 years on his sentence. Under the current version of the law, the same agreement would have saved him from a potential additional 15 years on his sentence. A sixty year difference is clearly a grossly disparate amount of time. Nonetheless, assuming §1B1.13(b)(6) were a valid policy statement, in order to qualify for relief under this provision, Mr. Jethrow would have to show, not that potential penalties for the charges in his indictment were grossly disparate, but that any sentence he would likely have received after passage of the new law would be grossly disparate from his original sentence. Thus, he would have to show: (1) that he would not have agreed to the plea agreement as written, and would have been likely to receive a grossly lower sentence through improved terms in the plea agreement; or (2) that he would have rejected the plea agreement entirely, and that he was likely to either prevail at trial, or receive a grossly lower sentence following a jury trial

Mr. Jethrow argues that the thirty year agreed sentence was higher than it would have been if the threat of 75 years of stacked §924(c) charges did not exist. (ECF #159, PageID 1676). However, he does not allege, that in their absence he would not have taken the plea, or that he would have had a better result if he had taken his case to trial. In addition, Mr. Jethrow, even under the new law, would have still received a significant benefit from his original plea agreement, and there was significant evidence against him. This makes it likely that he would have agreed to the same sentence in a plea agreement. Even under the new version of the law, Mr. Jethrow eliminated a potential 15 year addition to his term of imprisonment through the government's dismissal of Counts 6-8, and received three points off from his total offense level for acceptance of responsibility. The acceptance points reduced his sentencing guideline range from 188-235 months to 135-168 months, for his non-§924(c) charges. As part of the plea agreement he agreed to a total sentence of 360

months, including an above guideline sentence of 240 months plus ten years of mandatory consecutive time for the one §924(c) charge that was not dismissed. Without the benefit of his plea agreement, even under the new law, he would have faced 264 months on his §924(c) charges,[2] in addition to the guideline sentence of 188-235 months. There is no reason to believe that he would not have entered into the plea agreement to save himself from the potential of a minimum additional 92-139 months on his sentence. He also offers no evidence or argument to suggest that he could have prevailed on any of these counts at trial. Mr. Jethrow, therefore, has not shown that the change in law would have likely provided him with a grossly disparate sentence from the one he received.

Accordingly, even if U.S.S.G. §1B1.13(b)(6) were a valid policy statement, it would not provide Mr. Jethrow with a basis for relief under his individual circumstances. Non-retroactive changes to the law that do not meet the criteria of U.S.S.G. §1B1.13(6) may "not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. §1B1.13(c).

### b. COVID Resurgence

Mr. Jethrow argues that the COVID-19 pandemic created living conditions that were harsher and more punitive than expected. In addition, he claims that the Bureau of Prisons ("BOP") is experiencing a resurgence of COVID-19 outbreaks in prisons. The 2024 Amendments to the Sentencing Guidelines added §1B1.13(b)(1)(D) which provides that extraordinary and compelling reasons exist if:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

---

[2] He would have been subject to a seven year sentence for the §924(c)(1)(A)(ii) charge he pled guilty to, and five years each for the three §924(c)(1)(A)(i) charges dismissed as part of the plea agreement.

> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering sever medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

Though he makes general allegations that there is a resurgence of COVID-19 infections in the BOP, Mr. Jethrow does not give any indication that an outbreak is happening in his designated facility. Section §1B1.13(b)(1)(D)(i) requires a defendant to show that an ongoing outbreak is occurring in the specific facility where he is housed. It is not sufficient to say that this may be occurring at other facilities housing other individual defendants. Mr. Jethrow also fails to make any showing that he has health isssues that would put him at risk of severe medical complications or death if he were to contract COVID.[3] Therefore, he cannot satisfy the requirements of §1B1.13(b)(1)(D)(ii). Finally, he has not attempted to argue that the BOP is unable to mitigate any actual risks in a timely manner.

Mr. Jethrow also cites the unexpectedly harsh conditions that arose in prisons during the original COVID-19 outbreak as a grounds for finding extraordinary and compelling reasons for relief. In looking to this issue, the Court must make a determination as to whether the individual's situation is extraordinary and compelling when viewed in the context of other incarcerated individuals. Increased isolation and health care requirements implemented across the BOP, and applied consistently to all inmates, are not extraordinary, and cannot, therefore, be the basis for a finding of extraordinary and compelling reasons for an early sentence reduction. The unspecified, non-specific claim that COVID related conditions justify a reduction in sentence is not persuasive.

---

[3] Further, Mr. Jethrow filed a request for compassionate release during the height of the COVID-19 was denied relief. (ECF #119). The Court determined at that time that he had not shown that he had any condition that exposed him to an increased level of harm. (ECF #119).

### c. Youthfulness

Any relevance Mr. Jethrow's age may have had on the offense was already considered at his original sentencing. Although the Sentencing Guidelines do not prohibit consideration of circumstances that were known or anticipated by the sentencing court, the Sixth Circuit has held that, because the defendant's age is a fact known at sentencing, the youthfulness of an offender is an impermissible factual consideration for a district court to rely on when determining whether of "extraordinary and compelling" reasons exist for granting compassionate relief. *United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021); U.S.S.G. §1B1.13(e). However, even if the Court were to consider Mr. Jethrow's age, he has not shown that his age is an extraordinary and compelling reason that would justify a reduced sentence under 18 U.S.C. §3582(c)(1)(A). Mr. Jethrow was 27 years old at the time of arrest. (ECF #152, PageID1486). He was nearly a decade in adulthood. In the context of other offenders, he was not extraordinarily young when the offense conduct occurred. Even if he could qualify as a "youthful offender," it is unfortunately not extraordinary for a young defendant's conduct to warrant a long sentence. Therefore, whether considered alone or in combination with the other factors presented, Mr. Jethrow's age does not amount to an extraordinary and compelling reason for relief.

### d. Rehabilitation

Both the U.S.S.G. Policy Statement and the authorizing statute specifically preclude a court from relying solely on a Defendant's rehabilitative efforts when determining whether extraordinary and compelling reasons for relief exist. Section (d) of U.S.S.G. §1B1.13 provides that

> [p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

Mr. Jethrow has shown that he is making serious efforts toward rehabilitation and has demonstrated a noticeable change in behavior over the last five years of his imprisonment. This dedication to self-improvement is laudable. This is a realtively short amount of time, however, compared to his first ten years of imprisonment, which were fraught with disciplinary violations, including drug offenses and fighting. In addition, though rehabilitation is to be encouraged and applauded, it is also part of what is expected from all inmates. The BOP offers a multitude of opportunities for rehabilitation and skills development that will serve to improve inmates' lives both in and out of prison. However, rehabilitation, while potentially relevant in balancing the §3553(a) factors is not an extraordinary and compelling reason to shorten an inmate's sentence.

e. <u>Combination of Factors</u>

The Sentencing Commission has also included a sort of catch-all provision for unspecified circumstances, alone or in aggregate, that may rise to the level extraordinary and compelling reasons for a sentence reduction. U.S.S.G. §1B1.13(b)(5) states that extraordinary and compelling reasons exist when:

> The defendant presents any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Paragraphs one through three all involve serious health afflictions and conditions of old age, that may affect a defendant or close family member who, without an inmate's support has no means of self-care. The fourth paragraph offers relief to prisoners who have been physically or sexually abused by or at the direction of a correctional officer or other employee or contractor of the Bureau of Prisons. Mr. Jethrow's age, his rehabilitation, the existence of COVID, and his speculative belief that he would have had a lower sentence after the changes to §924(c), are not equal in gravity to the serious health and safety concerns addressed by §1B1.13(b)(1-4). Therefore, the reasons he cites to

justify compassionate release do not, alone or combined, risk to the level of extraordinary and compelling reasons that support relief.

### 2. Danger to the Community/18 U.S.C. §3553 Factors

In determining whether Mr. Jethrow remains a danger to the community, the Court looks at four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against him; (3) history and characteristics of the defendant; and, (4) the nature and seriousness of the danger to any person or the community if he were released. 18 U.S.C. §3142(g). These factors combine to show that Mr. Jethrow remains a danger to the community.

Mr. Jethrow pled guilty to one count of Armed Bank Robbery, three counts of Armed Carjacking, and one count of Discharging a Firearm During a Crime of Violence. He accepted a plea agreement requiring a mandatory term of imprisonment of thirty years. He is not scheduled to be released from prison until January 1, 2035. He has a violent background including other offenses such as Felonious Assault and Burglary. His conduct in this case was violent and extreme, and had multiple victims. Although he has had a clean disciplinary record for almost five years, his first ten years was peppered with violations. He has committed at least one violent act and multiple drug offenses while incarcerated for this case. At this point in time, despite his recently demonstrated commitment to rehabilitation, he has not proven that his recent efforts are a more reliable demonstration of his character than all of the years he spent engaging in criminal behavior, or the first ten years of incarceration when he continued to engage in prohibited activities.

In arriving at its conclusion, the Court considered all of Mr. Jethrow's arguments, as well as balancing all the factors set forth in 18 U.S.C. §3553(a). The combination of factors at play in Mr. Jethrow's case do not justify his request for release. For the reasons set forth above, Mr. Jethrow's arguments, and all of the factors set forth in 18 U.S.C. §3553(a), the Court finds, in its discretion,

that the Defendant's Motion for Reduction of Sentence should be DENIED.  (ECF # 152). IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATE: February 11, 2025